The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Jan Pittman. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at, prior to, and after the hearing as:
STIPULATIONS
1. All stipulations in the aforementioned Pre-Trial Agreement and Stipulated Exhibits No. 1 and No. 2 are incorporated herein by reference.
2. Following the hearing, depositions of Drs. Rao, Whetsell, Hayes and Mr. Witcher were taken and received into evidence.
EVIDENTIARY RULINGS
All objections raised during the depositions of Drs. Rao, Hayes, and Whetsell and Mr. Witcher are ruled upon in accordance with the law and the Opinion and Award in this case.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is a fifty-nine year old female high school graduate who was employed at the Erwin Mills plant previously owned by Burlington Industries and currently owned by Swift Textiles, Inc., for approximately twenty-five years until December 1992. On November 24, 1987, defendant-employer purchased from Burlington Industries, Inc., the Erwin Mills plant. Prior to November 24, 1987, the employee-employer relationship existed between plaintiff and Burlington Industries, Inc. From November 24, 1987, until January 24, 1988, the plant in which plaintiff worked was insured for workers' compensation purposes by Hartford Insurance Company. From January 24, 1988, until March 31, 1988, the plant in which plaintiff worked was insured for workers' compensation purposes by Liberty Mutual Insurance Company. Defendant became self-insured on June 1, 1988.
2. Plaintiff began having breathing problems in 1977 when working for Burlington Industries, Inc. At that time, plaintiff was out of work for five or six months and was treated by Dr. Edmundson, who diagnosed plaintiff as a byssinotic reactor. This condition resulted from plaintiff's exposure to cotton dust during her employment with Burlington Industries, Inc., in the winding department. Furthermore, plaintiff was placed at an increased risk of becoming a byssinotic reactor as a result of said employment. Subsequently, plaintiff was released to return to her regular work activities in 1977 as long as she used a respiratory protective device.
3. The device plaintiff was provided from 1977 until she last worked in December 1992 was a Racal AH5, referred to as an "airstream helmet."
4. The Racal AH5 is a powered air-purifying respirator (PAPR). It both filters the air of the worker and provides a powered air source in the form of a small blower that assists in providing a higher level of protection than would be achieved with the use of a negative pressure-type respirator. Such devices must meet governmental standards of effectiveness, and the AH5 was tested by the National Institute for Occupational Safety and Health (NIOSH). It was found to meet certain performance criteria and was certified by the American National Standards Institute (ANSI) as having a minimum protection factor of one hundred (100).
5. Although plaintiff was found to be a byssinotic reactor in 1977, she did not have chronic obstructive pulmonary disease at the time and had both normal lung function and normal pulmonary function test results.
6. On multiple occasions between December 1977 and December 1992, plaintiff was administered in-plant pulmonary function tests, first by Burlington Industries, Inc., and then later by defendant-employer, Swift Textiles. On each occasion, plaintiff was tested before her work-shift began and then five hours into it. Plaintiff was repeatedly found to not experience a decline in lung function over the course of her work-shift.
7. Plaintiff still had essentially normal pulmonary function studies when re-tested in August and September 1993, more than eight months after her last day of work and was also found to not exhibit any evidence of chronic airflow obstruction. Plaintiff does have mild restriction of lung function which is not related to her employment but rather is related to her obesity. Plaintiff is five feet four inches tall and weighs two hundred and forty pounds.
8. Plaintiff also has nonspecific bronchial hyper-reactivity which has been present since she was diagnosed to be a byssinotic reactor in the 1970's while working for Burlington Industries, Inc. Plaintiff remains susceptible to the effects of cotton dust, but said condition has not worsened since 1977 because of the protection afforded plaintiff by using the "airstream helmet." Without the protection afforded plaintiff by the "airstream helmet," plaintiff, as a byssinotic reactor, would have shown a measurable decline in lung function during the course of her employment in the textile industry which was mainly in the winding department between 1977 and 1992. However, plaintiff did not experience a decline in lung function during said period as the "airstream helmet" successfully protected plaintiff from exposure to cotton dust and preserved her lung function.
9. Plaintiff became a patient of Dr. Rao in July 1991 who evaluated plaintiff for her conditions of high blood pressure, arthritis, chest discomfort and a feeling of tightness associated with difficulty breathing. During her treatment with Dr. Rao, plaintiff received antibiotic treatment for episodes of bronchitis. However, spirometric testing revealed no evidence of airflow obstruction. Chronic bronchitis without airflow obstruction is a common disorder which has multiple causes. Assuming plaintiff does suffer from chronic bronchitis as a result of her exposure to cotton dust, this exposure occurred prior to the time plaintiff began wearing the "airstream helmet" and prior to plaintiff commencing employment with defendant-employer. Plaintiff continued receiving treatment for bouts of chronic bronchitis from Dr. Rao during 1992, and in December 1992 plaintiff ceased working with defendant-employer following development of an acute exacerbation of her bronchitis attributable to an infection, either viral or bacterial in nature.
10. During the course of her employment with the self-insured defendant-employer between June 1, 1988 and December 28, 1992, there was no decline in plaintiff's lung function; and that period of employment did not proximately augment plaintiff's lung condition to any extent, however slight.
11. Because of her bronchial hyper-reactivity which requires periodic treatment, plaintiff should not work in a dusty environment without appropriate respiratory protection. Otherwise, plaintiff possesses no limitation which precludes her from gainful employment. Plaintiff is capable of returning to her former job in the winding department with defendant-employer as long as she uses the type of respiratory protection she had used for many years prior to the last day she worked in December 1992. However, despite possessing the ability to return to work, plaintiff has not returned to her prior employment with defendant-employer, nor has she sought alternative work elsewhere since she last worked in December 1992.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff's lung condition has been present since she was diagnosed as a byssinotic reactor in the 1970's, and plaintiff did not contract said condition as a result of her employment with the self-insured defendant-employer. N.C. Gen. Stat. § 97-57.
2. Plaintiff's last injurious exposure to the development of her lung condition did not occur while she was employed by the self-insured defendant-employer. N.C. Gen. Stat. § 97-57.
3. Plaintiff is not disabled from gainful employment. N.C. Gen. Stat. § 97-52; N.C. Gen. Stat. § 97-2 (9).
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. This claim must, under the law, be and is hereby DENIED.
2. Defendants shall pay expert witness fees in the amounts of $90.00 to Mr. Witcher and $160.00 to Dr. Rao, to the extent such fees are not already paid.
3. Each side shall pay its own costs.
* * * * * * * * * * *
 S/ _________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ _________________ THOMAS J. BOLCH COMMISSIONER
S/ _________________ COY M. VANCE COMMISSIONER
DCS:bjp